# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| QUINCY BLAKELY and KIMBERLY BLAKELY, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-745-B (BH) |
| | § | |
| STEVEN ANDRADE, et al., | § | |
| Defendants. | § | Pretrial Management |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Standing Order of Reference*, filed November 6, 2017 (doc. 69), this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.  Before the Court for recommendation are the following:

> (1) *Motion to Dismiss Plaintiffs' Second Amended Complaint Under Fed. R. Civ. P. 12(b)(1) and (6) and Brief in Support of Defendants Steven Andrade, Brandon Howell, Keith Samet, Christopher Smith, Floyd Kincaide, Evelio Rivas, Doris Irvin, Candace Carlsen, David Robertson, Lupe Valdez and Dallas County*, filed April 11, 2018 (doc. 110);

> (2) *Defendants Steven Andrade, Brandon Howell, Keith Samet, Christopher Smith, Floyd Kincaide, Evelio Rivas, Doris Irvin, Candace Carlsen, David Robertson, Lupe Valdez and Dallas County's Motion to Stay Discovery, All Unexpired Deadlines and Other Pretrial Litigation Procedures and Brief in Support*, filed April 26, 2018 (doc. 114); and

> (3) *Sworn Emergency Motion for Injunction and Restraining Order*, filed October 5, 2018 (doc. 150).

Based on the relevant filings and applicable law, the motion to dismiss should be **GRANTED in part** and **DENIED in part**, the motion for injunction and restraining order should be **DENIED**, and the motion to stay discovery is **DENIED as moot**.

## I. BACKGROUND

On March 14, 2017, Quincy Blakely (Husband) and Kimberly Blakely (Wife) (collectively,

Plaintiffs) filed this *pro se* action against several defendants based on a traffic stop that occurred on March 14, 2015.  (*See* doc. 3.)  They appear to assert claims under 42 U.S.C. § 1983 for violations of their First, Second, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendment rights, and for conspiracy, against Dallas County Sheriff's Deputies Steven Andrade, Brandon Howell, Keith Samet, Christopher Smith, Floyd Kincaide, and Evelio Rivas (collectively, Deputies), the Dallas County Sheriff (Sheriff), Dallas County (County), Doris Irvin (Court Coordinator), Candace Carlsen (Magistrate), David Robertson (Detective) (collectively, Defendants),[1] and Phillip Wainscott (Attorney).  (*See* docs. 36 at 1-33[2]; 109 at 1-5, 11, 14-17, 22-51.)[3]  Sheriff is sued in both her official and individual capacities, and Deputies, Court Coordinator, Magistrate, Detective, and Attorney are all sued only in their individual capacities.  (docs. 36 at 1, 7, 13, 18, 25, 31; 109 at 1-4.)  Plaintiffs also appear to assert multiple state law claims against Magistrate, Sheriff, and Deputies, and Wife appears to assert claims for violations of the Declaration of Independence and Texas Constitution against Deputies.  (*See* docs. 36 at 1-33; 109 at 11-51.)  They seek "[c]ompensatory, special, exemplary, and punitive damages in the amount of five million dollars per defendant, per wrongful act," judicial interest, and "fees for litigation in bringing this 1983 action."  (docs. 36 at 6, 12, 17, 24, 29, 33; 109 at 52-53.)

Plaintiffs allege that Deputies Smith and Rivas initiated a traffic stop on the vehicle that Husband was driving, and in which Wife and their child were passengers, on March 14, 2015,

---

[1] Wife appears to allege her claims only against Deputies.  (doc. 36 at 1, 7, 13, 18, 25, 31.)

[2] Plaintiffs' second amended complaint states that Wife's claims against Deputies "have been explained in detail via [her answers to] the Magistrate Judge's Questionnaire."  (doc. 109 at 12.)

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

because their rear license plate light was not working.  (docs. 36 at 2; 109 at 6.)  Deputies Andrade, Howell, Samet, and Kincaide arrived on scene to assist.  (docs. 109 at 7-9.)  Husband handed Deputy Smith his driver's license and concealed handgun license.  (docs. 36 at 2; 109 at 6.)  Deputy Smith asked him to get out of the vehicle because he had a weapon, and Husband "respectfully declined" because he "had not committed a crime and was not in the commission of a crime."  (docs. 36 at 2; 109 at 6-7.)  Deputy Smith then reached into the vehicle and attempted to unlock the door, but Husband "defended [himself] and put [his] arm on top of [the] lock to prevent" Deputy Smith from unlocking the door.  (doc. 109 at 7.)  Deputy Kincaide shouted for Husband to get his "'[expletive] out of the vehicle,'" as he "assaulted [him] by reaching for [him] while displaying his service weapon."  (*Id*.)  Husband was then "violently removed" from the vehicle, "thrown to the ground," and assaulted by several Deputies.  (*Id*.)

Wife was recording the traffic stop on her cell phone, and she claims that while Husband was being removed from the vehicle, Deputy Andrade was "assaulting her and using excessive force by grabbing her personal cell phone and her arm while she was exercising her . . . right to record" Deputies.  (docs. 36 at 2; 109 at 7.)  Wife attempted "to record the remainder of the arrest," but Deputy Andrade told her "that if [she] did not put [her] phone down and stop recording, he was going to break it."  (doc. 36 at 2.)  She turned her phone off as a result of his threat, and Deputy Andrade pulled her out of the car and told her to "stand out of the way."  (*Id*.)  Wife then tried to start recording again, but she was told that if she did not stay to the side of the car, "then [she] would be put in handcuffs," and Deputy Andrade "grabbed [her] arm without consent while he had his hand on his gun."  (*Id*.)  Wife again attempted to record Deputies "but as [she] was recording, [Deputy] Howell snatched [her] phone out of [her] hand and turned [the] phone off to prevent her from

3

recording him and [Deputy] Smith violating her rights." (*Id.* at 8.) The video recording from the dashboard camera of one of the vehicles on the scene shows one of the Deputies take Wife's cell phone out of her hand because the light from the phone was shining in his face. (doc. 111.) The Deputy then handed the cell phone to another Deputy, and it was returned to her moments later as she was asked to stop shining the light from the phone at them. (*See id.*) She alleges that Deputy Smith ordered Deputy Howell to "seize the phone," and Deputy Howell "acted in concert with [Deputy] Smith and seized [her] cell phone without consent." (doc. 36 at 8-9.) Plaintiffs allege that they "sustained medically documented injuries from the unnecessary and excessive force" used during the traffic stop, including a separated shoulder for Wife. (*Id.* at 8-9, 38; doc. 109 at 7, 11.)

Husband was subsequently arrested for "unlawfully carrying a firearm while intoxicated by a license holder." (doc. 109 at 8-9.) Following the arrest, Deputies searched Plaintiffs' vehicle without a warrant or consent. (*Id.* at 6, 9-10.) Husband's handgun was confiscated and "is still in the possession of the [County]," and Plaintiffs' vehicle was towed. (*Id.* at 10.) Husband claims that he asked that the Sheriff return his handgun, but it has not been returned, and he has not been compensated for it. (*Id.* at 30.) Husband was ultimately charged with "assault on a public servant, resisting arrest[,] and unlawfully carrying a firearm while intoxicated by a license holder." (*Id.* at 9.) Wife "was not charged with any offense" following the traffic stop. (*Id.* at 20.) Husband asserts that his arrest "was made pursuant to warrants issued after the apprehension." (*Id.* at 9.) He contends that the arrest warrant and a probable cause affidavit were "allegedly signed" by Magistrate, but she was not on duty at the time they were signed. (*Id.* at 16.) He also claims that Magistrate is not a magistrate and is "not a person authorized to administer an Oath or sign an arrest warrant." (*Id.*) Plaintiffs filed a complaint with Detective regarding the traffic stop, and he took the

recording of the stop and their statements and allegedly "used them against [Husband] to benefit [Deputy] Smith" as part of a conspiracy between him and Deputy Smith. (*Id*. at 27.) Husband alleges that Detective and Deputy Smith also provided false information to the issuer of his concealed handgun license in order to have his license revoked. (*Id*. at 29.)

Husband initially hired an attorney to represent him but terminated him and informed the Court Coordinator that he "would be defending himself in the prosecution," and she allegedly told him that the attorney he hired would be his attorney until he hired a new one. (*Id*. at 12-13.) He asserts that because he attempted to represent himself on October 23, 2015, a warrant was issued for his arrest on October 29, 2015, and he was forced to hire counsel. (*Id*. at 13.) He contends that the Court Coordinator conspired with a judge to deprive him of his constitutional right to represent himself. (*Id*.) He also asserts that Attorney is a state actor who was hired as a bondsman, and who "filed a false affidavit of representation . . . stating that he was employed as counsel" on Husband's case. (*Id*. at 13.) Plaintiffs further allege that the County has multiple customs or policies that violate the rights of individuals, that it failed to train Deputies, and that it "is liable under the Double Jeopardy clause of the [Fifth] Amendment . . . ." (*See id*. at 31-35.)

Husband was indicted by a grand jury for assaulting a public servant on September 4, 2015. *See State of Tex. v. Quincy Blakely*, No. F15-18020-M (194th Dist. Ct., Dallas County, Tex. Apr. 9, 2015). His initial trial was held on May 18, 2018, and a mistrial was ordered after the jury was unable to reach a verdict. *See id*. His new trial is set for December 10, 2018. *See id*.

Plaintiffs filed their initial complaint on March 14, 2017, and subsequently amended their complaint for the first time on March 30, 2017. (docs. 3; 10.) Defendants filed motions to dismiss the first amended complaint on November 10, 2017 and November 29, 2017 based, in part, on

qualified immunity, and Plaintiffs then amended their complaint for the second time on March 22, 2018.  (docs. 71; 109.)

On April 11, 2018, Defendants moved to dismiss Plaintiffs' second amended complaint, Plaintiffs responded on May 3, 2018, and Defendants replied on May 8, 2018.  (docs. 110; 116-17.) Defendants then moved to stay discovery on April 26, 2018, Plaintiffs responded on May 22, 2018, and Defendants replied on May 29, 2018.  (docs. 114; 125; 131.)[4]  On October 5, 2018, Husband filed an "Emergency Motion for Injunction and Restraining Order" against the County and Magistrate.  (doc. 150.)  County and Magistrate responded on October 18, 2018, and Husband replied on November 9, 2018.  (docs. 153; 158.)[5]  The motions are now ripe for recommendation.

## II. PRELIMINARY INJUNCTION

Husband moves for "injunction and restraining order" against Magistrate and the County to enjoin the state judicial criminal proceedings against him. (doc. 150.)[6]

### A.    <u>Legal Standard</u>

A preliminary injunction can be issued only after notice to the adverse party.  *See* Fed. R. Civ. P. 65(a)(1).  The party seeking a preliminary injunction has the burden to show that he or she

---

[4] Attorney has not moved to dismiss any claims against him, and he has not filed anything in this case since his initial answer.  (*See* doc. 70.)

[5] Husband's reply brief exceeds the page limit in Local Civil Rule 7.2(c) of the Local Civil Rules for the Northern District of Texas and attaches evidence in support without leave of Court.  (*See* docs. 158-60.) The purpose of filing a reply brief "is to rebut the nonmovant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion."  *See Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239–40 (N.D. Tex. 1991).  A movant is not ordinarily permitted to introduce new evidence in support of a reply because such action deprives the non-movant of a meaningful opportunity to respond. *See id.*  Because Defendants did not have a meaningful opportunity to respond to the exhibits attached to Husband's reply, they are not considered.  *See id.* at 240 ("[W]here a movant has injected new evidentiary materials in a reply without affording the non-movant an opportunity for further response, the court [ ] retains the discretion to decline to consider them.").  Even if considered, however, the attachments would not change this recommendation.

[6] Husband is the only party seeking injunctive relief.  (*See* doc. 150.)

is entitled to it. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). In order to secure a preliminary injunction, the movant must show four elements:

> (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not issued; (3) that threatened injury to the movant outweighs any damage the injunction might cause to the opponent; and (4) that granting the injunction will not disserve the public interest.

*Karaha Bodas Co., LLC v. Perusahaan, et al.*,335 F.3d 357, 363 (5th Cir. 2003); *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984).

**B.    Substantial Likelihood of Success**

Magistrate and County assert that Husband cannot show a substantial likelihood of success on the merits because his claims for injunctive relief are barred by the *Younger* abstention doctrine.[7] (docs. 110 at 10-13; 153 at 3-7.)[8]

**1.    *Younger* Abstention**

Under the *Younger* abstention doctrine, "federal courts must[]refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted." *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004) (citing cases). "While it was once thought that *Younger* applied only to state criminal or 'quasi-criminal' proceedings, the [Supreme] Court has now made it clear that '[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved.'" *Women's Cmty. Health Ctr. of Beaumont, Inc. v. Tex. Health Facilities Comm'n*, 685 F.2d 974, 978–79 (5th Cir. 1982) (quoting *Middlesex Cnty. Ethics Comm. v. Garden*

---

[7] The doctrine takes its name from *Younger v. Harris*, 401 U.S. 37 (1971).

[8] Defendants also make this argument in their motion to dismiss any claims for injunctive relief alleged in the second amended complaint. (doc. 110 at 10-13.)

*State Bar Ass'n*, 457 U.S. 423, 432 (1982)).  The doctrine does not apply to claims for monetary relief, however.  *See Saloom v. Tex. Dept. Of Family and Child Protective Servs.*, 578 F. App'x 426, 429 (5th Cir. 2014) (stating that "requests for monetary damages do not fall within the purview of the *Younger* abstention doctrine").  Three conditions must be met for the doctrine to apply: "(1) the dispute must involve an 'ongoing state judicial proceeding;' (2) an important state interest in the subject matter of the proceeding must be implicated; and (3) the state proceeding must afford an adequate opportunity to raise constitutional challenges."  *Wightman–Cervantes v. Tex.*, No. 3:03-CV-3025-D, 2004 WL 2512208, at *2 (N.D. Tex. Nov. 5, 2004) (citing *Wightman v. Tex. Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996)); *see Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012).  If the three conditions are met, the "doctrine requires that federal courts decline to exercise jurisdiction" over the lawsuit unless "'certain narrowly delimited exceptions to the abstention doctrine apply.'"  *Bice*, 677 F.3d at 716 (citations omitted).

Here, Husband states that his "motion for an injunction is not being directed at the prosecution," but he argues that federal courts "have power to enjoin state officers from instituting a criminal action," he should have been discharged from his criminal case, and the state district court lacks subject-matter jurisdiction to bring a case against him, and he seeks to enjoin the criminal proceedings against him.  (doc. 150 at 2, 14, 19, 25.) His second amended complaint essentially seeks the same relief, i.e., to have the indictment in his criminal case quashed and the charges against him dismissed, and to bar his prosecution.  (*See* doc. 109 at 36, 40-41, 43.)  Husband seeks "injunctive relief based upon constitutional challenges to [his] state criminal proceedings," which may not be had if the *Younger* conditions apply.  *Tex. Ass'n of Bus.*, 388 F.3d at 518 (citing cases).

Husband's criminal case has been pending in state court since April 9, 2015.  *See State of*

*Tex. v. Quincy Blakely*, No. F15-18020-M (194th Dist. Ct., Dallas County, Tex. Apr. 9, 2015).[9] As

of March 14, 2017, when this suit was filed, his criminal case was still pending, and it is currently

set for trial on December 10, 2018. *See id.* The dispute therefore "involves an 'ongoing judicial

proceeding.'"[10] *See Wightman-Cervantes v. Tex.*, No. Civ.A. 3:03-CV-3025-D, 2005 WL 770598,

at *3 (N.D. Tex. Apr. 6, 2005) (quoting *DeSpain v. Johnston*, 731 F.2d 1171, 1178 (5th Cir. 1984)).

Husband's criminal proceedings also implicate an important state interest because "[t]he state has

a strong interest in enforcing its criminal laws." *Id.* at *3 (quoting *DeSpain*, 731 F.2d at 1176); *see*

*also Blakely v. Kelly*, No. 3:16-CV-2801-K-BN, 2016 WL 6581283, at *2 (N.D. Tex. Oct. 12, 2016)

(recognizing in a similar case that Plaintiffs previously filed, that criminal proceedings implicate an

important state interest ). Lastly, Husband "has not alleged any facts showing that [he will be]

barred from raising [his] constitutional concerns in the state court proceedings." *Shipula v. Tex.*

*Dep't of Family Protective Servs.*, No. H-10-3688, 2011 WL 1882521, at *9 (S.D. Tex. May 17,

2011). He will have "a full opportunity to raise his constitutional challenges in the Texas state

courts on direct appeal in the event of conviction or through a state habeas writ challenging his

detention or conviction." *Blakely*, 2016 WL 6581283, at *2 (citing *DeSpain*, 731 F.2d at 1176); *see*

*also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) (federal courts "should assume that state

court procedures will afford an adequate remedy, in the absence of unambiguous authority to the

---

[9] Judicial notice of the filings in Dallas County District Court may be taken, as they are matters of public record. *See Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings"); *see also Silva v. Stickney*, No. 3:03-CV-2279-D, 2005 WL 2445433, at *7 (N.D. Tex. Sept. 30, 2005) (taking judicial notice of a plaintiff's prior case).

[10] To determine if a "dispute involves an 'ongoing state judicial proceeding,' the point of reference is the date suit was filed." *Wightman-Cervantes*, 2005 WL 770598, at *3 (quoting *DeSpain*, 731 F.2d at 1178). "Additionally, '[t]he state interest that is triggered by the institution of the state proceeding continues through the completion of the state appeals process,' and, as a result, 'the *Younger* doctrine requires that federal courts abstain when a state proceeding is pending and the state appellate procedure has not been exhausted.'" *Id.*

contrary."); *Kugler v. Helfant*, 421 U.S. 117, 124 (1975) ("ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights"); *Childress v. Watkins*, No. 5:14-CV-748-DAE, 2014 WL 4274311, at *3 (W.D. Tex. Aug. 28, 2014) (finding that "state proceedings, which include the appeal process, are adequate to redress any alleged constitutional deprivation").

Because all three conditions of *Younger* are met, jurisdiction over Husband's requests for injunctive relief is lacking unless an exception applies. *See Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (finding that if the three conditions are met, a court may "enjoin a pending state-court criminal proceeding only if" an exception applies); *Blakely*, 2016 WL 6581283, at *2.

### 2.    *Exceptions*

Husband asserts that exceptions to the *Younger* abstention doctrine do apply in this case. (docs. 116 at 2; 150 at 17.)[11]

The *Younger* abstention doctrine does not apply if:

> (1) the state-court proceeding was brought in bad faith or to harass the federal plaintiff; (2) the federal plaintiff seeks to challenge a state statute that is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it, or (3) where other extraordinary circumstances threaten irreparable loss [that] is both great and immediate.[12]

*Gates*, 885 F.3d at 880 (quotations omitted) (quoting *Younger*, 401 U.S. at 45); *see also Bice*, 677 F.3d at 716 n.3 (quoting *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004)).   The plaintiff "has the burden of showing that [an] exception applies."  *Wightman-Cervantes*, 2005 WL

---

[11] Husband specifically raises exceptions to *Younger* in his response to Defendants' motion to dismiss. (*See* doc. 116 at 9-13.)

[12] The Fifth Circuit has also "recognized that application of the *Younger* abstention doctrine can . . .be waived." *Gates*, 885 F.3d at 880 n.2 (citation omitted).

770598, at *5 (citing *Stewart v. Dameron*, 460 F.2d 278, 279 (5th Cir. 1972)); *see Malone v. Dutton*, No. A-16-CA-1183-SS, 2017 WL 4399564, at *4 (W.D. Tex. Oct. 3, 2017) (citing cases) ("A plaintiff arguing against the application of *Younger* bears the burden of establishing one of the exceptions applies.").

### a.    Bad Faith

Husband alleges that his criminal prosecution was brought in bad faith, and that he is "being harassed with prosecution . . . ."  (docs. 116 at 2-8; 150 at 17.)

"The Fifth Circuit has applied the bad faith exception in 'two major circumstances': first, when a state commences a prosecution or proceeding to retaliate for or to deter constitutionally protected conduct; and second, when the prosecution or proceeding is taken in bad faith or for the purpose to harass."  *All Am. Check Cashing, Inc. v. Corley*, 191 F. Supp. 3d 646, 660 (S.D. Miss. 2016) (citations omitted) (citing cases).  A federal court must abstain from entering an injunction "unless the movant pleads and proves bad faith, harassment, or other exceptional circumstances . . . ."  *Wightman–Cervantes*, 2004 WL 2512208, at *2 (citing *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 87 (5th Cir. 1992)).  The "'bad faith' exception is narrow and should be granted parsimoniously."  *Hefner v. Alexander*, 779 F.2d 277, 280 (5th Cir. 1985).  It applies where:

> (1) the plaintiff establishes that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected, and that the state's bringing of the criminal prosecution was motivated, at least in part, by a purpose to retaliate for or to deter that conduct; and (2) the state fails to show by a preponderance of the evidence that it would have decided to prosecute even had the impermissible purpose not been considered.

*Jordan v. Reis*, 169 F. Supp. 2d 664, 669 (S.D. Tex. 2001) (citing *Wilson v. Thompson*, 593 F.2d 1375, 1382–83 (5th Cir. 1979)).

Here, Husband asserts that evidence from his initial trial showed that he did not commit a

11

crime, his arrest was fraudulent, and the indictment against him is fatally defective. (docs. 116 at 2-8; 150 at 17-19.) He does not identify any constitutionally protected conduct, and he fails to allege sufficient facts to show that his subsequent prosecution was "instituted and conducted . . . to retaliate for or *to deter constitutionally protected conduct . . . .*" *All Am. Check Cashing, Inc.*, 191 F. Supp. 3d at 660 (emphasis in original); *see also Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981) (per curiam) (the bad faith exception applies "if the plaintiff establishes that the conduct allegedly retaliated against or sought to be deterred is constitutionally protected and that the state's bringing of the criminal prosecution is motivated at least in part by a purpose to retaliate against or deter that conduct"). Husband makes only conclusory allegations that his "prosecution has been brought in bad faith and [he is] being harassed . . . ." *See id.* at 662; *Wightman-Cervantes*, 2004 WL 2512208, at *3-4 (declining to apply the bad faith exception where the plaintiff failed to plead facts in support of his conclusory allegations regarding the actions of a judge and prosecutor). Additionally, the fact that "a grand jury found the requisite probable cause to issue an indictment against [Husband] . . . weighs against a determination" that he is being prosecuted "with no hope of obtaining a valid conviction." *See Jordan*, 169 F. Supp. 2d at 669. Accordingly, Husband's allegations do not support application of the bad faith exception.

### b.    Unconstitutional State Statute

Husband also argues that section 547.322 of the Texas Transportation Code (the Code), the basis for his traffic stop, "is not positive law, nor does the Code apply to [him]." (doc. 116 at 9-10.) He contends that he has a "natural human right to travel . . . without government interference," and that the Code is unconstitutional because it deprives him of his right to travel. (*Id.* at 10.)

As noted, *Younger* does not apply if a challenged state statute "flagrantly and patently"

violates "express constitutional prohibitions . . . ."  *Bice*, 677 F.3d at 716 n.3 (quoting *Tex. Ass'n of Bus.*, 388 F.3d at 519).  "'[T]he possible unconstitutionality of a statute on its face does not in itself justify an injunction against good-faith attempts to enforce it.'" *Kolski v. Watkins*, 544 F.2d 762, 766 (5th Cir. 1977) (quotations omitted) (quoting *Younger*, 401 U.S. at 54); *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 (1975) ("facial invalidity of a statute is not itself an exceptional circumstance justifying federal interference with state criminal proceedings.").

"[C]ourts have held that 'driving an automobile on public roads is not a constitutionally protected right, but a privilege.'" *Perkins v. Brewster*, No. 1:17-CV-378-LY, 2018 WL 814250, at *2 (W.D. Tex. Feb. 9, 2018) (quoting *Leverson v. State*, Nos. 03-15-00090-CR, 03-15-00091-CR, 03-15-00092-CR, 2016 WL 4628054, at *9 (Tex. App.—Austin Aug, 30, 2016, no pet.) (mem. op., not designated for publication)); *see Gillaspie v. Dep't. of Pub. Safety*, 259 S.W.2d 177, 182 (Tex. 1953) ("a license or permit to drive an automobile on the public highways and streets is a privilege . . . .").  It is within a state's police powers to "reasonably regulate any who use public roads" in order "to protect the welfare and safety of the general public."  *Perkins*, 2018 WL 814250, at *2 (citing *Leverson*, 2016 WL 4628054, at *9); *Snyder v. State*, Nos. 05-01-00121-CR, 05-01-00122-CR, 2001 WL 1382270, at *1 (Tex. App.—Dallas Nov. 8, 2001, pet. ref'd) (mem. op., not designated for publication) (citing cases).

Section 547.322 provides that "vehicles shall be equipped with at least two taillamps," "including a separate lamp used to illuminate a rear license plate . . . ."  Tex. Trans. Code Ann. § 547.322(a), (g).  Husband cites to no authority to support a finding that statutes providing general lighting requirements for vehicles "flagrantly and patently" violate "express constitutional prohibitions," and such regulations are "a reasonable use of the police power to protect the welfare

13

and safety of the general public." *Snyder*, 2001 WL 1382270, at *1; *cf. Naff v. State*, 946 S.W.2d 529, 533 (Tex. App.—Fort Worth 1997, no pet.) (citing cases) ("regulating licensing, inspection, and registration laws[,] and requiring proof of financial responsibility as a protection for Texas citizens is a proper subject of the State's police powers[.]").  Accordingly, Husband has failed to meet his burden of establishing that this exception to the *Younger* abstention doctrine applies.

### c.      Extraordinary Circumstances

Husband finally asserts that his prosecution for assault of a public servant constitutes double jeopardy "because there is no actual victim, complainant, or witness stated with exactitude" in the offense report or indictment, which subjects him "to subsequent prosecution."  (doc. 150 at 19.)

"Double-jeopardy claims can constitute the kind of extraordinary circumstances that justify an exception from *Younger* . . . ." *Gates*, 885 F.3d at 882 (citations omitted).  "The Double Jeopardy Clause protects against (1) a second prosecution after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.*" United States v. Paternostro*, 966 F.2d 907, 911 (5th Cir. 1992) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  "In order for the Double Jeopardy Clause to have any application, there must be actions by a sovereign, which place an individual twice in jeopardy." *United States v. Cruce*, 21 F.3d 70, 74 (5th Cir. 1994) (citing *United States v. Goff*, 847 F.2d 149, 169 (5th Cir. 1988); *United States v. Stricklin*, 591 F.2d 1112, 1118 (5th Cir. 1979)).

Here, Husband appears to argue that he could be subjected to subsequent prosecutions for the same offense in violation of the Double Jeopardy Clause because "the indictment is fatally defective for failure to state the nature and cause of the accusation and fails to state the most basic elements of the alleged criminal acts, and fails to name a victim . . . ."  (doc. 150 at 19.)  He has not

14

shown that he is being prosecuted after being acquitted of or convicted for assaulting a public servant, or that he has received multiple punishments for that same offense, however. (*See id.*) "As the Supreme Court has explained, the collateral-estoppel element of double jeopardy prevents relitigating 'an issue of ultimate fact' that has already been 'determined by a valid and final judgment.'" *Gates*, 885 F.3d at 882 (quoting *Dowling v. United States*, 493 U.S. 342, 347–48 (1990)). Because Husband has not been acquitted, convicted, or punished for the same offense for which he is currently being prosecuted, "double-jeopardy concerns are not implicated." *Id*. His pending prosecution "would not violate the Double Jeopardy Clause and an injunction is not warranted on this basis." *Id*.

Because all three conditions of the *Younger* abstention doctrine are met, and Husband fails to show that an exception applies, his motion for injunctive relief should be denied, and any claims for injunctive relief alleged in the second amended complaint should be dismissed without prejudice for lack of subject-matter jurisdiction. *Thomas v. State*, 294 F. Supp. 3d 576, 593–96 (N.D. Tex. 2018) (finding that claims for injunctive relief should be dismissed without prejudice for lack of subject-matter jurisdiction based on *Younger*).

### III. MOTION TO DISMISS

Defendants move to dismiss Plaintiffs' claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (doc. 110 at 9-10, 13-28.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that

15

"*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196.

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

16

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss or in a response to a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007); *see Walch v. Adjutant General's Dept. of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008). However, "[i]f . . . matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Nevertheless, "pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents attached to a motion to dismiss or to a response to a motion to dismiss "are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003); *see Walch*, 533 F.3d at 293–94 (finding that reliance on documents attached to a response to a motion to dismiss was appropriate where the documents were "sufficiently referenced in the complaint"). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Accordingly, documents falling in these three

categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Defendants attached to their motion to dismiss a video recording from the dashboard camera of one of the deputies' vehicles at the traffic stop, and copies of records related to Magistrate's hiring, job position, work schedule, work address, and payroll. (docs. 111; 110-2-110-6.) Although these filings are not attached to Plaintiffs' second amended complaint, they may be considered part of the pleadings because they are attached to Defendants' motion to dismiss, referred to in the second amended complaint, and central to Plaintiffs' claims. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins*, 224 F.3d at 498–99; *see also King v. Fox Entm't Grp., Inc.*, No. 4:08-CV-688-Y, 2009 WL 4573720, at *1 & n.2 (N.D. Tex. May 4, 2009) (considering a video recording in determining a motion to dismiss because it was referred to in the plaintiff's complaint and central to her claims).

Plaintiffs attached documents to their response to Defendants' motion to dismiss that were not attached to their complaint, including copies of the following: warrants for Husband's arrest that resulted from the traffic stop; Magistrate's work schedule, work address, payroll, and oath of office; a determination of probable cause to issue arrest warrants sheet signed by Magistrate; a general warranty deed signed by Magistrate; responses to records requests; an arraignment sheet for Husband; printouts from the Dallas County Appraisal District Website; an affidavit from Deputy Smith describing the events of the traffic stop and arrest; Husband's indictment for assaulting a public servant; images from a video of the traffic stop that was recorded by Plaintiffs; and part of a deposition apparently given by Deputy Smith. (doc. 116-1 at 1-33.) These documents are referenced in Plaintiffs' second amended complaint and appear to be central to their claims, so they

may also be properly considered without converting the motion to dismiss into a motion for summary judgment.[13] *See Walch*, 533 F.3d at 293–94 (affirming judgment in which the district court relied in part on documents attached to the plaintiff's response to a motion to dismiss in deciding that motion); *Smith v. J.P. Morgan Chase Bank, N.A.*, No. 4:14-CV-682, 2016 WL 4974899, at *4 (E.D. Tex. Sept. 19, 2016) (recognizing that a court may consider documents attached to a response to a motion to dismiss); *Carter v. First Nat. Collection Bureau, Inc.*, 135 F. Supp. 3d 565, 573–74 n.11 (S.D. Tex. 2015) (considering documents attached to a plaintiff's response to a motion to dismiss without converting that motion into a motion for summary judgment).

## A.    *Heck* **Bar**

Defendants move to dismiss Plaintiffs' claims on grounds that they are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  (doc. 110 at 13-15.)[14]

Under *Heck*, when a successful civil rights action would necessarily imply the invalidity of a plaintiff's conviction or sentence, the claim must be dismissed unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. 512 U.S. at 486–87.

---

[13]  Plaintiffs also attached copies of an affidavit for an arrest warrant for an individual not in this case, emails regarding records in Husband's criminal case, and an image of the back of their vehicle to their response.  (*See* doc. 116-1 at 7, 25-27, 29, 31.)  Because these documents are not attached to the second amended complaint, referenced in the second amended complaint, or central to their claims, they are not considered as part of the pleadings.  Even if considered, these documents do not appear to relate to any issues raised in the motion, so their consideration would not affect this recommendation.

[14]  Defendants also move to dismiss under *Heck* based on Rule 12(b)(1).  (doc. 110 at 13-15.) Claims that are *Heck*-barred are not subject to dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1), however, and instead should be addressed under Rule 12(b)(6).  *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996); *see also Mendia v. City of Wellington*, 2011 432 F. App'x 796, 797 n.1 (10th Cir. Aug. 15, 2011) ("a dismissal under *Heck* is for failure to state a claim, which falls under Rule 12(b)(6)") (citing *Hafed v. Fed. Bur. of Prisons*, 635 F.3d 1172, 1178 (10th Cir. 2011).  Defendants' arguments for dismissal based on *Heck* will therefore be construed as arising under Rule 12(b)(6).

A plaintiff does so by achieving "favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam). "[T]he *Heck* determination depends on the nature of the offense and of the claim." *Arnold v. Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004).

*Heck* does not extend to cases where a plaintiff files a civil rights action challenging his arrest before any conviction. *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007); *see also DeLeon v. Corpus Christi*, 488 F.3d 649, 655 (5th Cir. 2007) (noting that the Supreme Court in *Wallace* refused to extend *Heck's* application to pending criminal matters). In *Wallace*, the Supreme Court stated that:

> If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended.

549 U.S. at 393–94.

Husband is currently facing a charge for assaulting a public servant arising from the traffic stop and arrest. (doc. 109 at 9.) He asserts numerous claims against Defendants, including claims for excessive force, false arrest, and illegal search and seizure against Deputies that all arise out of the traffic stop and his subsequent arrest. (*See id.* at 6-51.) These claims appear to be "related to rulings that will likely be made" in his pending criminal trial. *See Wallace*, 549 U.S. at 393–94. Because his claims against Deputies appear to be based on the traffic stop and arrest, *Heck* may bar his claims against Deputies if he is convicted of that charge. *See Whatley v. Coffin*, 496 F. App'x 414, 416 (5th Cir. 2012) (finding that claims against the city, chief of police, and police officers for excessive force were barred by *Heck* where they would imply the invalidity of a conviction for

20

assault of a public servant); *Walter*, 483 F. App'x at 887 (false arrest claim barred where it would necessarily imply the invalidity of a conviction); *Walker v. Munsell*, 281 F. App'x 388, 389–90 (5th Cir. 2008) (claims for excessive force and malicious prosecution based on the defendant's arguments that he did not resist, did nothing wrong, and was attacked for no reason were barred under *Heck*).

Although Wife's claims arise out of the same traffic stop, she was not arrested or charged with any crimes.  She claims, in part, that she was unlawfully seized, deprived of her Fourteenth Amendment due process and equal protection rights as a result of the traffic stop, and that the vehicle was unlawfully searched and seized.  (doc. 36 at 3-4, 9-10, 15-16, 20-22.)  Even though no criminal proceedings are pending against her, it is possible that *Heck* may also bar those claims because they "are intertwined and based on substantially the same factual allegations" as Husband's claims, and it would be necessary to make a determination on the validity of the traffic stop and arrest in order to determine whether those alleged violations occurred.  *Willis v. City of Hattiesburg*, No. 2:14cv89-KS-MTP, 2015 WL 13651763, at *5 (S.D. Miss. Jan. 30, 2015) (citing cases) (finding that claims of all plaintiffs, even those without criminal proceedings pending against them, were subject to stay based on *Heck*); *see also Blakely*, 2016 WL 6581283, at *2 (recommending stay of proceedings under *Heck* as to both Plaintiffs in their previous lawsuit until Husband's state criminal case was resolved); *Richardson v. Union Pub. Safety Dep't Police*, No. 7:10-CV-2679-MGL-JDA, 2012 WL 4051826, at *5 (D.S.C. July 27, 2012) (staying proceedings as to both plaintiffs even though there was no criminal conviction or pending appeal associated with one of the plaintiffs). *Heck* could not bar her other claims, however, as they are based on Deputies' actions against her only, and would not require the Court to address the validity of the traffic stop or Husband's arrest.

At this point, "it is simply premature to determine whether or not" Husband's damages

claims against Deputies and Wife's damages claims for unlawful seizure of her person, deprivation of her Fourteenth Amendment rights, and unlawful search and seizure of the vehicle are barred under *Heck*. *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995); *see also Richardson*, 2010 WL 11553418, at *4 (finding that it was "premature to determine whether or not . . . § 1983 claims [were] barred under *Heck*."). Accordingly, the motion to dismiss on this basis should be denied, and the appropriate action is to "stay proceedings in [this] § 1983 case" as to Husband's claims against Deputies, and as to Wife's claims to the extent she asserts claims for violations of her due process and equal protection rights under the Fourteenth Amendment, her seizure during the traffic stop, and the subsequent search and seizure of the vehicle "until [Husband's] related pending criminal case is resolved." *Blakely*, 2016 WL 6581283, at *2 (quoting *Gross v. Normand*, 576 F. App'x 318, 319 (5th Cir. 2014) (per curiam)); *Willis*, 2015 WL 13651763, at *5 (citing cases); *see also Wallace*, 549 U.S. at 393–94; *Profit v. Ouachita Parish*, 411 F. App'x 708, 709 (5th Cir. 2011) (noting with approval that the district court had stayed a civil case attacking the legality of a detainee's arrest, prosecution, and detention pending the resolution of the criminal charges).

## B.    Absolute Immunity

Magistrate and Court Coordinator argue that Husband's claims against them are barred by absolute immunity. (doc. 110 at 26-28.)

### 1.    Judicial Immunity

Magistrate contends that the claims against her should be dismissed based on the doctrine of judicial immunity. (doc. 110 at 26.)

The Supreme Court has recognized absolute immunity for judges acting in the performance of their judicial duties. *See Nixon v. Fitzgerald*, 457 U.S. 731, 745–46 (1982). Judges are immune

from suit for damages resulting from any judicial act unless performed in "the clear absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356–357 (1978); *Young v. Biggers*, 938 F.2d 565, 569 n.5 (5th Cir. 1991). Allegations of bad faith or malice do not overcome judicial immunity. *Mireles*, 502 U.S. at 11.

"Texas courts employ the same judicial immunity analysis as the federal courts in this Circuit . . . ." *Durrance v. McFarling*, No. 4:08-CV-289, 2009 WL 1577995, at *3 (E.D. Tex. June 4, 2009) (citing *Hawkins v. Walvoord*, 25 S.W.3d 882, 890 (Tex. App.—El Paso 2000, pet. denied)); *see Sharp v. Palmisano*, No. 16-5429, 2013 WL 5969661, at *4 (E.D. La. Nov. 8, 2013) (citing *Hawkins*, 25 S.W.3d at 890) (recognizing that Texas' judicial immunity principles mirror the federal judicial immunity doctrine). Accordingly, to the extent Magistrate is immune from Husband's federal claims, she is also immune from any state law claims.[15]

Here, Husband alleges that Magistrate is not a magistrate judge who enjoys judicial immunity, and is not "authorized to administer an [o]ath or sign an arrest warrant," or "perform any duties at all." (doc. 109 at 16-21.) He contends that Magistrate issued an invalid warrant for his arrest in violation of his constitutional rights because there was "no affidavit supported by oath or affirmation . . . [when] a warrant was issued." (*Id*. at 21-22.) He makes no specific allegations that Magistrate acted outside the scope of her judicial duties and therefore acted without jurisdiction,

---

[15] Federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In essence, § 1367(a) grants courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:06-CV-879-BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Here, Husband's state and federal claims all relate to his arrest and the subsequent criminal proceedings. (*See* doc. 109.) The state and federal claims form part of the same case or controversy or derive from one common nucleus of operative fact. Accordingly, the Court should exercise supplemental jurisdiction over Husband's state law claims.

however.  The record shows that Magistrate was selected and confirmed for her position as a part-time magistrate judge for the Criminal District Court of Dallas County.  (docs. 110-2 at 2; 110-3 at 2; 110-6 at 2-3.)  Because Husband seeks damages for judicial acts that were within her jurisdiction, all of his claims against her are barred by judicial immunity.  *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 635–36 (N.D. Tex. 2007) (finding that claims against judges were barred by judicial immunity).[16]

### 2.    *Quasi-Judicial Immunity*

Court Coordinator argues that Husband's claims against her should be dismissed because they are barred by quasi-judicial immunity.  (doc. 110 at 27-28.)

Individuals who perform judicial functions "have absolute [quasi-judicial] immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion." *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981); *see also Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996) (holding that officials acting within the scope of their authority enjoy absolute immunity "from a suit for damages to the extent that the cause of action arises from his compliance with a facially valid judicial order issued by a court acting within its jurisdiction").  The reasoning for such immunity is that "court personnel should not serve as a lightening rod for harassing litigation." *In re Foust*, 310 F.3d 849,

---

[16] Even if Husband could assert his claims against Magistrate, any claims that would challenge the validity of his conviction would be barred under *Heck* if he were convicted of assault of a public servant.  *See Heck*, 512 U.S. at 486–87 (holding that a civil rights action must be dismissed when it "would necessarily imply the invalidity of a plaintiff's conviction," and the plaintiff fails to demonstrate that the conviction has been reversed, expunged, or otherwise called into question).  The Court may bypass the potential *Heck*-bar so as to address issues that are appropriate for early and final determination, however.  *See Patton v. Jefferson Correctional Ctr.*, 136 F.3d 458, 462 n. 6 (5th Cir. 1998) (when an action raises an issue of immunity, the court to the extent it is feasible to do so should determine that issue as early in the proceedings as possible); *Smithback v. Cockrell*, No. 3:01-CV-1658-M, 2002 WL 1268031, at *2 (N.D. Tex. June 3, 2002) (accepting recommendation that "[w]hen a plaintiff seeks relief unavailable under 42 U.S.C. § 1983 or sues individuals or entities who are not proper parties under § 1983, it also seems appropriate to have an early determination of those issues").

855 (5th Cir. 2002).  They "enjoy [ ] only qualified immunity[, however,] for those routine duties not explicitly commanded by a court decree or by the judge's instructions."  *Clay*, 242 F.3d at 682.  A court coordinator has absolute immunity when his actions are prescribed by court rules.  *Florence v. Buchmeyer*, 500 F. Supp. 2d 618, 643 (N.D. Tex. 2007).

Here, Husband alleges that the Court Coordinator conspired with a judge to deprive him of his Sixth Amendment right to represent himself.  (doc. 109 at 12-13.)  He has not alleged that any actions were not taken under court order, according to court rules, or at a judge's discretion, however, so the Court Coordinator also has absolute immunity for these actions.  *See Small v. Dallas Cty. Tex.*, 170 F. App'x 943, 944 (5th Cir. 2006) (holding that the clerk of a state district court was entitled to absolute immunity absent allegation that any of his actions were not taken under court order or at judge's discretion); *Lewis v. City of Waxahachie*, No. 3:10-CV-2578-N-BH, 2011 WL 7070991, at *3 (N.D. Tex. Dec. 21, 2011) (finding that a county clerk had absolute immunity for claims asserted against her under section 1983).  Husband's § 1983 claims against the Court Coordinator should be dismissed.  *See Lewis*, 2011 WL 7070991, at *3.

Because Magistrate and the Court Coordinator have absolute immunity, any claims against them should be dismissed for failure to state a claim.  *See Nalls v. LaSalle*, 568 F. App'x 303, 304–05, 307 (5th Cir. 2014) (affirming dismissal of the plaintiff's § 1983 claims for failure to state a claim based on judicial immunity); *Florance*, 500 F. Supp. 2d at 635–36 (dismissing claims against a court clerk for failure to state a claim based on absolute immunity).

## C.    Qualified Immunity

Deputies argue that they are entitled to qualified immunity from Wife's remaining § 1983

constitutional claims.[17]  (doc. 110 at 15-19.)[18]

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.*  To state a claim, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity.  *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992).  Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation.  *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The Supreme Court has held that plaintiffs are not required to anticipate a qualified immunity defense by providing greater specificity in their initial pleadings.  *Crawford-El v. Britton*, 523 U.S.

---

[17] As noted, Wife's claims are asserted only against Deputies.  (*See* doc. 36.)

[18] Although Deputies move to dismiss both Plaintiffs' claims against them based on qualified immunity, only Wife's claims for excessive force against her, unlawful seizure of her cell phone, and for violations of her right to record are addressed at this point because as noted, Plaintiffs' other claims against Deputies may be *Heck* barred if Husband is convicted in his state court criminal case.

574, 595 (1998).  The Fifth Circuit has held that a plaintiff is not required to "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12."  *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc); *accord Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995) (per curiam). Although "[c]ourts in this district have [generally] denied without prejudice motions to dismiss on qualified immunity grounds when the motion is filed before the defendant has answered and actually raised the defense,"*McKay v. Dallas Indep. Sch. Dist.*, No. 3:06-CV-2325-L, 2007 WL 2668007, at *9 (N.D. Tex. Sept. 6, 2007),[19] Deputies actually raised their qualified immunity defense in their initial motion to dismiss, and Plaintiffs subsequently amended their complaint and addressed this defense.  (*See* docs. 71; 109 at 11.)  Plaintiffs "had the opportunity to file . . . [their] amended complaint . . . after having seen the motion to dismiss," and they sought to provide "the Court with specific facts answering the arguments in the [initial] motion."  *Parra-Sanchez v. Gusman*, No. 07–5501, 2018 WL 4587302, at *4 (E.D. La. Oct. 15, 2008).  Because Plaintiffs were able "to file an amended complaint with additional factual detail," and "the Court has sufficient factual allegations to make a ruling on the qualified immunity defense asserted in the most recent motion to dismiss . . . , the Court [may] consider the qualified immunity defense as asserted in the motion to dismiss."  *Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2017 WL 3046881 (N.D. Tex. May 25, 2017), *adopted by*, 2017 WL 3034317 (N.D. Tex. July 17, 2017); *see Prater v. Wilkinson Cty., Miss.*, No. 5:13-CV-23-DCB-MTP, 2014 WL 7334185, at *4–5 (S.D. Miss. Dec. 19, 2014) (considering qualified immunity defense raised in a motion to dismiss where the defendants asserted

---

[19] *See also Roberts v. Kirkpatrick*, No. 3:14-CV-812-N, 2016 WL 625055, at *3-4 (N.D. Tex. Jan. 25, 2016), *adopted by*, 2016 WL 614020 (N.D. Tex. Feb. 16, 2016) (denying motion to dismiss on grounds of qualified immunity because the plaintiff was not required to anticipate a qualified immunity defense by providing greater specificity in his initial pleading); *Johnson v. Anderson*, No. 4:03-CV-1355-Y, 2004 WL 1908212, at *1 n.1 (N.D. Tex. Aug. 2004) (citing *Schultea*, 47 F.3d at 1430) ("after *Schultea*, it appears . . . that a Rule 12(b)(6) motion to dismiss on the ground of qualified immunity is no longer viable.").

the defense in their initial motion to dismiss, the plaintiff amended his complaint, and the defendants reasserted the defense in a subsequent motion to dismiss); *see also Parra-Sanchez*, 2018 WL 4587302, at *4 (disagreeing with the plaintiff's argument that the court could not grant a motion to dismiss based on qualified immunity where the defense was not raised in an answer).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry.  The first prong entails consideration of whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 235–36 (2009). Under the second prong, courts determine whether "'the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.'"  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005)).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. at 202.  It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to the case at hand.[20]  *Pearson*, 555 U.S. at 236; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("*Saucier's* rigid 'order of battle' . . . is now advisory."). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity.  *Lytle*, 560 F.3d at 410.

"The issue of qualified immunity is often resolved on summary judgment, but the Court may

---

[20] Current law applies to the first prong, but "the law at the time of the incident" applies to the second prong. *See Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008).

also consider the issue in a motion to dismiss." *Gill v. Delvin*, 867 F. Supp. 2d 849, 855 (N.D. Tex. 2012) (citing *Iqbal*, 556 U.S. at 677–78); *see also Brown v. City of Houston*, 297 F. Supp. 3d 748, 772–73 (S.D. Tex. 2017) (analyzing cases to determine that the issue of qualified immunity may be considered on a motion to dismiss). "Once a government official pleads the defense of qualified immunity, the burden shifts to the plaintiff to rebut the defense." *Ezell v. Wells*, No. 2:15-CV-00083-J, 2015 WL 4191751, at *5 (N.D. Tex. July 10, 2015) (citing *Thompson v. Upshur Cty.*, Tex., 245 F.3d 447, 456 (5th Cir. 2001)); *accord Pierce v. Smith*, 117 F.3d 866, 871–72 (5th Cir. 1997)). To satisfy that burden on a motion to dismiss, the plaintiff must claim that a defendant violated the plaintiff's constitutional rights and that the violation was objectively unreasonable in light of law that was clearly established at the time of the conduct. *Club Retro, LLC*, 568 F.3d at 194; *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005); *see also Buehler v. City of Austin*, No. 1:17-CV-724-LY, 2018 WL 4225046, at *3 (W.D. Tex. Sept. 5, 2018). Here, Deputies have asserted their qualified immunity defense, so the burden is on Wife to plead sufficient facts showing the inapplicability of that defense. (*See* doc. 110 at 15-19.)

### 1. Constitutional Violation

Deputies assert that their conduct did not violate Wife's constitutional rights. (doc. 110 at 15-17.)

#### a. Excessive Force

Wife contends that she was deprived of her constitutional rights "to be free from unreasonable and excessive force," and that the use of force by Deputies Andrade and Howell to remove her from the vehicle caused her "physical injuries that have been medically documented." (docs. 36 at 3, 5, 9, 11; 116 at 19, 21.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure of a person occurs when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968). The Supreme Court has held that "all claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). To succeed on a Fourth Amendment excessive force claim under § 1983, a plaintiff must show "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Id*.; *accord Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

Whether Wife has stated a Fourth Amendment excessive force claim depends on whether she has sufficiently alleged that Deputies Andrade and Howell's alleged use of force was objectively unreasonable under the circumstances. *Graham*, 490 U.S. at 395. Objective reasonableness is "a pure question of law" that is considered after determining the relevant facts. *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). To gauge the objective reasonableness of the force used, the courts "must balance the amount of force used against the need for force." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores*, 381 F.3d at 399). Proper application of this balancing test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The reasonableness inquiry must consider "the fact that police officers

30

are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 397.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (citing *Terry*, 392 U.S. at 22–27). The use of force or threat must be objectively reasonable under the circumstances, however. *See id*. 395.

Here, Wife alleges that she was "simply sitting in the car" with her son and not being confrontational, and that Deputies Andrade and Howell used excessive and unnecessary force against her without probable cause or legal justification when they grabbed her arm and pulled her out of the vehicle. (doc. 36 at 5, 8-9, 11, 1, 265.) She argues that Deputy Andrade placed her in "fear of losing [her] life as the force occurred while [he] displayed his service weapon," and that the force he used "was applied intentionally and maliciously to cause harm." (*Id*. at 5.) She also contends that she "was unlawfully threatened and subjected to offensive contact" by Deputy Howell when he "snatched [her] phone out of [her] hand" to prevent her from recording while displaying his service weapon. (*Id*. at 9, 11, 15.) She claims that she suffered "physical, mental, and emotional injuries," including a separated shoulder, and that Deputies Andrade and Howell's "use of excessive force was not objectively reasonable under the totality of the circumstances." (*Id.* at 5, 11, 38.)

Accepting these facts as true and viewing them in the light most favorable to Wife, as required at this stage of the proceedings, they suffice to give rise to a reasonable inference that Deputies Andrade and Howell used excessive force against her during the traffic stop. She therefore sufficiently states a Fourth Amendment violation against Deputies Andrade and Howell for their

alleged use of excessive force.[21]

### b.    Unlawful Seizure

Wife argues that Deputies Andrade and Howell "seized [her] cell phone without consent" in violation of her constitutional rights.  (docs. 36 at 8-9, 12, 15, 20, 27, 32; 116 at 16-17, 21.)

As noted, the Fourth Amendment prohibits unreasonable seizures.  U.S. Const. amend. IV. A "seizure" of property within the meaning of the Fourth Amendment occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal*, 506 U.S. at 61 (quoting *Jacobsen*, 466 U.S. at 113).  The Fourth Amendment only prohibits unreasonable seizures, however.  *See Severance v. Patterson*, 566 F.3d 490, 502 (5th Cir. 2009).  A determination of whether a seizure is unreasonable, and therefore in violation of the Fourth Amendment, involves a careful balancing of governmental and private interests.  *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985); *see also Freeman v. City of Dallas*, 242 F.3d 642, 649 (5th Cir. 2001).

Here, Wife claims that Deputy Howell "snatched [her] phone out of [her] hand and turned [her] phone off to prevent [her] from recording" the alleged violations of her rights.  (doc. 36 at 8-9, 12, 15, 19, 27, 32.)  The video recording[22] from the dashboard camera shows one of the Deputies asking Wife to stop shining the light from the cell phone in his face before grabbing the phone out of her hand and handing it to another Deputy.  (*See* doc. 111.)  She then asked for her phone back,

---

[21] Wife also alleges that she was subjected to cruel and unusual punishment in violation of the Eighth Amendment.  (doc. 36 at 3, 9, 21.)  To the extent she is asserting this claim in relation to the alleged excessive force used against her by some Deputies, "[c]laims of excessive force . . . are based on the Fourth Amendment not the Eighth Amendment."  *Cabarobio v. Midland Cty., Tex.*, No. MO:13-CV-00111-RAJ, 2015 WL 13608102, at *13 (W.D. Tex. Jan. 7, 2015) (citing  *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996)).  The Eighth Amendment "only applies to convicted prisoners," which she is not.  *Id.*  Accordingly, she cannot successfully allege a constitutional violation under the Eighth Amendment.  *See id.*

[22] The Supreme Court has held that a plaintiff's version of facts that is blatantly contradicted by video evidence may be disregarded.  *Scott v. Harris*, 550 U.S. 372 (2007); *see also Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (applying *Scott* in the context of a motion to dismiss where the evidence was attached to the complaint).

and he told her not to shine the light in his face anymore before returning it to her moments later. (*See id.*)  The video does not show any "meaningful interference with [Wife's] possessory interests in [the cell phone]."  *See Soldal*, 506 U.S. at 61 (quoting *Jacobsen*, 466 U.S. at 113).  The Deputy only grabbed the phone from her after asking that she not shine the light in his face, and the cell phone was returned to her in less than 30 seconds.  *See Harris v. City of Lubbock*, No. 5:17-CV-010-C, 2017 WL 4479950, at *4 (N.D. Tex. June 16, 2017) (noting that an officer briefly confiscated the plaintiff's cell phone but returned it "only moments later without searching its contents" in finding that there was not violation of the plaintiff's constitutional rights).  Because there was no meaningful interference with Wife's possessory interest in the cell phone, there was no "seizure" of property within the meaning of the Fourth Amendment.  *See Soldal*, 506 U.S. at 61 (quoting *Jacobsen*, 466 U.S. at 113); *c.f. Arizona v. Hicks*, 480 U.S. 321, 324 (1987) (brief moving of stereo equipment to record serial numbers did not constitute a seizure); *United States v. Alvarez*, No. 92-8541, 1993 WL 261146, at *3 (5th Cir. July 9, 1993) (unpublished opinion) (finding that "the shorter the seizure, the less it interferes with . . . possessory interests."); *United States v. Lovell*, 849 F.2d 910, 916 (5th Cir. 1988) (determining that the brief removal of bags from a conveyor belt did not "constitute a meaningful interference with [the plaintiff's] possessory interest in his bags.").  Wife has failed to sufficiently allege a constitutional violation for the alleged "seizure" of her cell phone, and Deputies Andrade and Howell are entitled to qualified immunity on this claim.[23]

### c.    Prevention of Recording

Wife argues that she was deprived of her First Amendment "right to record public officials

---

[23] Because dismissal of this claim has been recommended for failure to allege a constitutional violation, it is unnecessary to consider whether Wife sufficiently alleged a violation of clearly established law for her claim that her cell phone was unlawfully seized.

engaged in the public discharge of their duties" by Deputies Andrade, Howell, and Smith.  (docs. 36 at 3-4, 9-10, 20-22, 33; 116 at 17.)

The First Amendment proscribes, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." U.S. Const. amend. I.  Freedom of speech and freedom of the press "has long [been] interpreted to include 'an undoubted right to gather news from any source by means within the law.'" *Adelman v. Dallas Area Rapid Transit*, No. 3:16-CV-2579-S, 2018 WL 3520426, at *3–4 (N.D. Tex. July 20, 2018) (quoting *Houchim v. KQED, Inc.*, 438 U.S. 1, 11 (1978)).  The Fifth Circuit has determined that "the principles underlying the First Amendment support the particular right to film the police."  *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017).  The right to film police officers "'engaged in their duties in a public place'" "contributes to the public's ability to hold the police accountable, ensure police officers are not abusing their power, and make informed decisions about police policy."  *Id*. at 689–90 (citation omitted).

Here, Wife alleges that she began recording on her cell phone when the traffic stop was initiated.  (doc. 36 at 8.)  As she was recording, Deputy Andrade touched her offensively and pulled on her arms "to try to get [the] phone out of [her] hand to prevent her from recording . . . ." (*Id*.) She was in the vehicle and attempted to start recording again, but as she did, Deputy Andrade opened the car door, grabbed her right arm while her phone was in her left hand, "and told [her] that if [she] did not put [the] phone down and stop recording, he was going to break it." (*Id*.)  She turned her phone off based on his threat, but then turned her phone back on to begin recording again.  (*Id*.) When she attempted to move to continue recording, Deputy Andrade threatened to put her in handcuffs if she did not stay on the side of the vehicle.  (*Id*.)  She began recording again "but as [she] was recording, [Deputy] Howell snatched [her] phone out of [her] hand and turned [the] phone

34

off to prevent [her] from recording him and [Deputy] Smith violating [her] rights." (*Id.*)  She alleges

that Deputy Smith ordered Deputy Howell to "seize the phone," and Deputy Howell "acted in

concert with [Deputy] Smith and seized [her] cell phone without consent." (*Id.* at 8-9.)

As noted, Wife's facts must be accepted as true and viewed in the light most favorable to her

at this stage of the proceedings.  Her allegations sufficiently give rise to a reasonable inference that

Deputies Andrade, Howell, and Smith prevented her from recording them during the traffic stop.

She therefore sufficiently states a constitutional violation.  *See Turner*, 848 F.3d at 689 ("a First

Amendment right to record the police does exist . . . ."); *Buehler*, 2018 WL 4225046, at *3 (citing

*Turner*, 848 F.3d at 689).[24]

### 2.    *Clearly Established Law*

Deputies also argue that Wife has failed to plead specific facts showing that their "conduct

violated any clearly established constitutional right . . . ."    (doc. 110 at 17-19.)

To show the inapplicability of the asserted qualified immunity defense, a plaintiff must claim

that the constitutional violations were objectively unreasonable given the clearly established law at

the time of the alleged constitutional violation.[25]  *See Club Retro, L.L.C.*, 568 F.3d at 194.  When

qualified immunity is raised in a motion to dismiss, "it is the defendant's conduct as alleged in the

---

[24] Wife also generally alleges violations of the Fifth and Ninth Amendments. (doc. 36 at 2, 7, 11, 13, 18, 25.) The Fifth Amendment only applies to the actions of the federal government, however, and Wife asserts her claims only against state officials. *Richard v. Hinson*, 70 F.3d 415, 416 (5th Cir. 1995).  Additionally, the Ninth Amendment "'does not confer substantive rights upon which civil rights claims may be based.'"  *Clark v. Lafayett Police Dep't*, No. 6:18-CV-0058, 2018 WL 3602974, at *8 (W.D. La. July 11, 2018) (quoting *Johnson v. Tex. Bd. of Criminal Justice*, 281 F. App'x 319, 320 (5th Cir. 2008)); *see also Jennings v. Clay*, No. 2:13-CV-0015, 2013 WL 3388403, at *4 (N.D. Tex. July 8, 2013) (citations omitted) ("The Ninth Amendment does not confer any specific constitutional guarantee," and "[n]o cause of action exists based upon its violation.").  Accordingly, to the extent she seeks to assert claims for violations of the Fifth and Ninth Amendments, she cannot sufficiently state constitutional violations.

[25] This is an "entirely separate inquiry" from the reasonableness determination inherent in considering whether the plaintiff has claimed a Fourth Amendment excessive force claim.  *Ontiveros*, 564 at 383 n.1.

complaint that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

For purposes of qualified immunity, "clearly established" means that the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Therefore, the right must already be clearly established at the time of the challenged conduct. *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). Being clearly established in an abstract sense generally gives insufficient notice—in most cases, the law should be clear in a more particularized sense related to the specific context in which the officer is acting. *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004) (discussing both scenarios); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (recognizing that when the constitutional violation is obvious, a materially similar case is unnecessary to find the law clearly established); *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (discussing both scenarios). Because the primary concern is fair notice to the officer, the law can be clearly established in some cases "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope*, 536 U.S. at 740 (citation omitted).

### a.    Unreasonableness of Force

Wife asserts that the force used by Deputies Andrade and Howell was objectively unreasonable and in violation of "a clearly established right." (docs. 36 at 3, 5, 10, 11; 116 at 19.)

At the time of the March 2015 traffic stop, it was clearly established that the right to make an investigatory stop necessarily allows for officers "to use some degree of physical coercion or threat thereof to affect it." *Graham*, 490 U.S. at 396 (citing *Terry*, 392 U.S. at 22–27). The

permissible degree of physical coercion depends "the severity of the crime at issue, [and] whether the [individual] poses an immediate threat to the safety of the officers or others . . . ." *Id*. at 396. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment," however. *Id*. (citation omitted).

Here, the traffic stop was initiated for a minor traffic violation, and Wife was not arrested or charged for any crimes; nor does it appear that she was suspected of committing any crime at the time of the incident. (*See* docs. 36; 109.) Wife alleges that Deputies Andrade and Howell grabbed her arm and pulled her out of her vehicle even though she was "simply sitting in the car" and not being confrontational during the traffic stop. (doc. 36 at 5, 8-9, 11, 19, 26.) She claims that as a result of these actions, she suffered injuries, including a separated shoulder. (*Id*. at 2, 5, 38.) Although the grabbing of her arm would not in itself appear to be sufficient to show excessive force, she alleges that the grabbing of her arm was severe enough to cause her to suffer a separated shoulder. "While the Fourth Amendment's reasonableness test is 'not capable of precise definition or mechanical application,' the test is clear enough that [Deputies Andrade and Howell] should have known" that they could not remove Wife from the vehicle with such force that would result in a separated shoulder. *See Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008); *Cardenas v. Lopez*, No. SA-08-CA-0596-FB, 2009 WL 10678531, at *2 (W.D. Tex. Jan. 26, 2009) (finding that the pleadings overcame a qualified immunity defense where the plaintiff "alleged facts showing that he sustained an injury, which resulted from . . . the use of force . . ., and that the excessive force was objectively unreasonable.").

Taking Wife's allegations as true, as the Court must at this point, she has adequately alleged the Deputies Andrade and Howell used excessive force in violation of the Fourth Amendment, and

that their use of force was objectively unreasonable under the law in March 2015. Deputies Andrade and Howell are therefore not entitled to dismissal on the basis of qualified immunity on this claim at this stage, and the motion to dismiss should be denied to the extent it seeks dismissal of this claim.

> **b.    Right to Record**

Wife also asserts that she was denied her First Amendment right to record Deputies as they were "engaged in the public discharge of their duties." (docs. 36 at 3, 9; 116 at 17.)

As noted, the Fifth Circuit has established that there is a right to record police officers engaged in their duties. *Turner*, 848 F.3d at 689. In *Turner*, the court found that "[a]t the time in question, September 2015, neither the Supreme Court nor this court had determined whether First Amendment protection extends to the recording or filming of police." *Id*. at 606. The Fifth Circuit concluded that because "there was no clearly established right to record the police at the time of [the plaintiff's] activities," the officers were entitled to qualified immunity. *Id*. at 687. It went on to hold that although the right to record police officers "was not clearly established at the time of [the] arrest in 2015, it has been established as of February 16, 2017." *Adelman*, 2018 WL 3520426, at *4 (citing *Turner*, 848 F.3d at 687–88).

Here, the traffic stop occurred on March 14, 2015. (docs. 36 at 2; 109 at 6.) At the time of the stop, it was not clearly established that there was a right to record officers carrying out their public duties. As in *Turner*, Deputies Andrade, Howell, and Smith are entitled to qualified immunity on Wife's First Amendment claim for violation of her right to record because that right was not clearly established at the time of the incident. *See Turner*, 848 F.3d at 687–88; *Adelman*, 2018 WL 3520426, at *4 (finding that an officer was entitled to qualified immunity because the right to record the police was not clearly established at the time of the plaintiff's activities); *Basler v.*

38

*Barron*, No. H-15-2254, 2017 WL 784895, at *3–5 (S.D. Tex. Mar. 1, 2017) (determining that a deputy was entitled to qualified immunity because at the time of the plaintiff's arrest, "the right to film the police was not a 'clearly established right' under the First Amendment.").

In summary, Deputies Andrade and Howell are entitled to qualified immunity from Wife's claims that they unlawfully seized her cell phone, and both they and Deputy Smith are also entitled to qualified immunity from her claims that they deprived her of her right to record Deputies during the traffic stop. Deputies Andrade and Howell are not entitled to qualified immunity at this stage of the proceedings from Wife's claims that they used excessive force against her in violation of her rights under the Fourth Amendment at this stage of the proceedings.[26]

## D.    <u>Municipal Liability</u>

The County argues that Husband's failure to train claim should be dismissed because he fails to "identify any formal policy or persistent and widespread practice that was the 'moving force' behind the alleged constitutional violations in [his] case." (doc. 110 at 22.)[27]

Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978); *Jones v. City*

---

[26] Wife also appears to allege a conspiracy under § 1983, and violations of the Declaration of Independence, Texas Constitution, and state law. (*See* doc. 36 at 2-33. ) Deputies have not moved to dismiss these claims. (*See* doc. 110.)

[27] Husband also appears to assert that the County violated his constitutional rights by holding him in jail without a probable cause hearing, denying his right to indictment by a grand jury and to present exculpatory evidence to a grand jury, allowing him to be arrested and held for bond on assault allegations when there is no victim on the offense report, permitting false charges to be filed against him to secure a bond from him, violating the Double Jeopardy Clause of the Fifth Amendment, and holding him without bail for failure to pay bail. (doc. 109 at 31-43, 49.) He also appears to assert claims for excessive force and false arrest directly against the County. (*Id.* at 43-44, 50-51.) The County does not move to dismiss any claims based on these alleged violations. (*See* doc. 110.)

*of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at \*3 (N.D. Tex. Mar. 2, 2006) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)).  It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases).  "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."  *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005).  Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.  *Monell*, 436 U.S. at 691–95.

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."  *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79.  "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted).  In *Spiller*, the Fifth Circuit found insufficient an allegation that "[the officer] was acting in compliance with the municipality's customs, practices or procedures."  *Spiller*, 130 F.3d at 167.  It has also found that a single incident is not enough to infer an official policy or custom.  *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753–54 (5th Cir. 2009);

*Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581.[28]

### 1.    Failure to Train

"The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849 (5th Cir. 2009) (citing *Brown*, 219 F.3d at 458).  In the Fifth Circuit, "to hold a municipality liable for failure to train an officer, it must have been obvious that 'the highly predictable consequence of not training' its officers was that they 'would apply force [or initiate arrests] in such a way that the [constitutional] rights of [citizens] were at risk.'" *See Id*. (quoting *Brown*, 219 F.3d at 461).  "The failure to train must reflect a 'deliberate' or 'conscious' choice by a municipality." *World Wide Street Preachers Fellowship*, 591 F.3d at 756 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) (internal quotation marks omitted).

Here, Husband argues that the County "failed to train its officers adequately to prevent racially discriminatory conduct," unlawful arrests, and the use of excessive force.  (doc. 109 at 43-45.)  He alleges that the "County failed to provide its law enforcement with . . . training, [and] acted with deliberate indifference to [his] constitutionally protected rights, because the consequences of

---

[28] There is an "extremely narrow" single incident exception in the context of failure-to-train claims.  *Hobart v. Estrada*, 582 F. App'x 348, 358 (5th Cir. 2014).  Under that exception, "§ 1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations" in "extreme circumstances."  *Brown v. Bryan Co.*, 219 F.3d 450, 459 (5th Cir. 2000), *cert. denied*, 131 S. Ct. 66 (2010)); *Khansari v. City of Houston*, No. H-13-2722, 2015 WL 6550832, at *16 (S.D. Tex. Oct. 28, 2015) (citing *Brown*, 219 F.3d at 452–48).  To show liability, "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation."  *Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).  This exception is not applicable here, however, as Husband does not allege that a decision was made not to train an individual deputy or that Deputies were "provided no training whatsoever."  *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) ("Our caselaw suggests, however, that the exception is generally reserved for those cases in which the government actor was provided no training whatsoever); *see McClendon v. City of Columbia*, 258 F.3d 432, 442–43 (5th Cir. 2001), *vacated for reh'g en banc*, 285 F.3d 1078 (5th Cir. 2002), *decision on rehearing en banc*, 305 F.3d 314 (5th Cir. 2002) (noting "there is a difference between a complete failure to train . . . and a failure to train in one limited area.").

failing to provide such training are known or obvious." (*Id*. at 50.)  He alternatively argues that even if the County provided Deputies with proper training, it acted with deliberate indifference to his constitutional rights because it "failed to ensure that its law enforcement actually retained the information." (*Id*.)  He further claims that the County's "custom was the moving force behind [his] constitutional deprivations." (*Id*. at 51.)  He relies only the actions of Deputies on the night of the traffic stop and arrest to argue that their actions prove "that [they] were not properly trained," and that their lack of training "was the proximate cause of [his] injuries." (*Id*. at 47-48.)

Husband's allegations do not suffice to show that it was obvious that the highly predictable consequence of the County's alleged failure to train was that its deputies "'would apply force [or initiate arrests] in such a way that the [constitutional] rights of [citizens] were at risk.'" *See Peterson*, 588 F.3d at 849 (quoting *Brown*, 219 F.3d at 461).  Additionally, he alleges no facts to support his assertion that the County's alleged failure to train reflects deliberate indifference to his constitutionally protected rights.  Because he makes only formulaic recitations of the elements, and relies only on a single incident and conclusory allegations, his allegations do not support a plausible claim for municipal liability against the County under a theory of failure to train.  *See Twombly*, 550 U.S. at 555; *World Wide Street Preachers Fellowship*, 591 F.3d at 753–54; *see also Hester v. Dallas Cty. Jail*, No. 3:11-CV-3099-B-BH, 2012 WL 1430539, at *3 (N.D. Tex. Mar. 6, 2012), *adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012) ("His single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom . . . .").

### 2.    *Other Claims*

In addition to his failure to train claim, Husband asserts that the County is liable under the Fourth and Fourteenth Amendments because it has numerous customs that deprive citizens of their

42

constitutional rights. (doc. 109 at 31-44, 49-51.) The County has not moved to dismiss any claims based on these allegations. (*See* doc. 110.) A court may *sua sponte* dismiss a plaintiff's claims for failure to state a claim as long as the plaintiff has notice and an opportunity respond. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).[29]

Husband does not specifically identify a policy, practice, or procedure that the officially adopted and promulgated by the County's policymakers. (*See* doc. 109.) Rather, he asserts that the County has customs which caused him to be held in jail without a probable cause hearing, denied of his right to indictment by a grand jury and to present exculpatory evidence to a grand jury, arrested and held for bond on assault allegations when there was no victim on the offense report, held without bail for failing to pay bail, and to have false charges filed against him to secure a bond from him. (*Id*. at 31-44, 49.) He lists about state court case numbers and argues that those cases prove that the County has the customs he has alleged. (*Id*. at 31-35, 37.)

The Fifth Circuit has explained that "[w]here prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [county] employees.'" *Peterson*, 588 F.3d at 850 (quoting *Webster*, 735 F.2d at 842). The Fifth Circuit also explained that "[a] pattern . . . requires 'sufficiently numerous prior incidents,' as opposed to isolated instances." *Id*. (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)). The "plaintiff must at least allege . . . a pattern of similar incidents in which citizens

---

[29]"The fourteen-day time frame for filing objections to a recommended dismissal provides [a plaintiff] with notice and an opportunity to respond." *Fantroy v. First Fin. Bank, N.A.*, No. 3:12-CV-0082-N (BH), 2012 WL 6764551, at *7 (N.D. Tex. Dec. 10, 2012) (citing *Ratcliff v. Coker*, No. 9:08-CV-127, 2008 WL 4500321, at *3 n.1 (E.D. Tex. Sept. 26, 2008)), *adopted by*, 2013 WL 55669 (N.D. Tex. Jan. 4, 2013).

were injured or endangered by intentional or negligent . . . misconduct and/or that serious incompetence or misbehavior was general or widespread . . . ." *Fraire*, 957 F.2d at 1278 (quoting *Languirand v. Hayden*, 717 F.2d 220, 227 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984)).

Although Husband cites case numbers to support his argument that the alleged customs exist, he does not allege any facts to show how any of those cases show that the County has customs which deprive citizens of their rights. (*See* doc. 109 at 31-35, 37.) He makes only conclusory allegations that the cases show that the County has these alleged customs. (*Id.*) These "conclusions, unsupported by facts, are not entitled to the presumption of truth." *Davenport v. City of Garland, Tex.*, No. 3:09-CV-798-B, 2010 WL 1779620, at *2–3 (N.D. Tex. Apr. 9, 2010), *adopted by*, 2010 WL 1779619 (N.D. Tex. Apr.30, 2010). His conclusory allegations that prior cases establish that the County has customs that caused the alleged constitutional violations, without more, are insufficient to show "a pattern of similar incidents in which citizens were injured or endangered" by the alleged conduct as required for municipal section 1983 liability. *See Fraire*, 957 F.2d at 1278 (quoting *Languirand*, 717 F.2d at 227). Because Husband essentially relies on a single incident plus generalities and conclusions, he has not sufficiently alleged an official policy or custom for municipal liability, and his claims against the County for violations of the Fourth and Fourteenth Amendments should be dismissed *sua sponte*. *See World Wide Street Preachers Fellowship*, 591 F.3d at 753–54; *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Hester*, 2012 WL 1430539, at *3 (stating that a "single alleged incident is insufficient to infer" an official policy or custom).[30]

---

[30] Husband also asserts that the County is liable under the Fifth Amendment Double Jeopardy Clause. (doc. 109 at 34-37.) As previously found, however, "double-jeopardy concerns are not implicated" because Husband has not been acquitted, convicted, or punished for the same offense for which he is currently being prosecuted. *See Gates*, 885 F.3d at 882 (quoting *Dowling*, 493 U.S. at 347–48). Accordingly, any claims based on the Double Jeopardy Clause

E.   **Personal Involvement**

Sheriff moves to dismiss the claims alleged against her in both her individual and official

capacities.  (doc. 110 at 21-22.)

*1.*   ***Individual Capacity***

Sheriff argues that the claims against her in her individual capacity should be dismissed

because "[t]here are no facts alleged to show that [she] was personally involved in . . . the conduct

made the basis of this suit."  (*Id.* at 22.)

Supervisory officials cannot be held liable for the unconstitutional actions of their

subordinates based on any theory of vicarious or *respondeat superior* liability.  *See Estate of Davis*

*ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir. 2005).  In order to

prevail against a supervisor under § 1983, a plaintiff must show that: 1) the supervisor's conduct

directly caused a constitutional violation; or 2) that the supervisor was "deliberately indifferent" to

a violation of a constitutional right.  *Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000).

The acts of a subordinate "trigger no individual § 1983 liability."  *Champagne v. Jefferson Parish*

*Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999).  There must be some showing of personal

involvement by a particular individual defendant to prevail against that individual.  *Id*.  A plaintiff

cannot make generalized allegations.  *Howard v. Fortenberry*, 723 F.2d 1206 (5th Cir. 1984).

Here, Husband alleges that he sent requests to Sheriff advising her that Deputy Smith was

"in illegal possession of [his] property" and demanding the return of his property.  (doc. 109 at 30.)

He contends that Sheriff is responsible for Deputy Smith's taking of his personal property and for

not returning his property following his requests.  (*Id*. at 29-31.)  He does not identify any personal

_____

should also be dismissed *sua sponte*.

involvement by Sheriff, however, and she cannot be held liable for the allegedly unconstitutional actions of Deputy Smith. *See Champagne*, 188 F.3d at 314 (no individual liability under § 1983 where complaint alleges no personal involvement by the defendant in violating plaintiff's rights by working him beyond his capabilities in prison); *see also Estate of Davis ex rel. McCully*, 406 F.3d at 381. Additionally, to the extent he complains that Sheriff did not return his property following his requests, a failure to respond to a letter or grievance does not rise to the required level of personal involvement for liability. *See Amir–Sharif v. Valdez*, No. 3:06-CV-2258-P, 2007 WL 1791266, at *2 (N.D. Tex. June 6, 2007) (holding that no liability under § 1983 had been alleged because a failure to take corrective action in response to a grievance does not rise to the level of personal involvement); *Praylor v. Partridge*, No. 7-03-CV-247BD, 2005 WL 1528690, at *2 (N.D. Tex. June 28, 2005) (same). Because he has not alleged that Sheriff was personally involved in any alleged violations of his civil rights, his federal claims against her should be dismissed for failure to state a claim. *Johnson v. Valdez*, No. 3:13-CV-2173-B, 2013 WL 5489957, at *2 (dismissing claims against a sheriff for failure to allege any personal involvement); *Carson v. Dallas Cty. Jail*, No. 3:13-CV-0678-K, 2013 WL 3324222, at *2–3 (N.D. Tex. June 28, 2013) (dismissing claims against a sheriff and other supervisory officials for failure to allege any personal involvement).

### 2.    *Official Capacity*

Sheriff also argues that the official capacity claims against her should be dismissed because his allegations are "insufficient to impose *Monell* liability." (doc. 110 at 21-22.)

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Husband's claims against Sheriff in her official capacity are therefore essentially claims against the

County. *See id*; *Stiff v. Stinson*, No. 3:12-CV-4998-D, 2013 WL 3242468, at *3 (N.D. Tex. June 27, 2013) (citing *Graham*, 473 U.S. at 165). As noted, municipal liability under § 1983 requires proof of an official custom or policy. *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694); *see also Valle*, 613 F.3d at 541-42; *Cox*, 430 F.3d at 748.

Here, Husband relies on the same allegations for both his individual capacity and official capacity claims against Sheriff. (doc. 109 at 29-31.) He does not allege a specific policy that was officially adopted and promulgated by the County's lawmaking officials, nor does he allege any persistent or widespread practice that caused his alleged injuries as it relates to his allegations against Sheriff. (*See id*.) He has therefore failed to state a viable § 1983 claim against the County based on the failure to return his property, and his official capacity claims against Sheriff should be dismissed. *See Beavers v. Brown*, No. 3:13-CV-1395-B, 2013 WL 6231542, at *3 (N.D. Tex. Dec. 2, 2013) (finding that claims against county employees in their official capacities should be dismissed); *Stiff*, 2013 WL 3242468, at *3–4 (same).

## F.    <u>No Meeting of the Minds</u>

Detective and Deputy Smith argue that Husband fails to allege a meeting of the minds between them to fabricate false charges against him. (doc. 110 at 20.)[31]

As noted, § 1983 provides redress for violations of a citizen's constitutional rights. *Livadas*, 512 U.S. at 132 (1994). A plaintiff may assert a conspiracy claim under § 1983. *See Golla v. City of Bossier City*, 687 F. Supp. 2d 645, 662 (W.D. La. 2009) (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)) (quotations omitted). To state a conspiracy claim under § 1983, a plaintiff must

---

[31] Detective and Deputy Smith also move to dismiss the conspiracy claim against them based on official immunity. (doc. 110 at 19-20.) Official immunity applies to state law claims, however, and Husband's conspiracy claim appears to arise only under federal law. *See Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (determining whether officers were entitled to official immunity for state law claims).

allege facts to support "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds as recognized by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992). A plaintiff must also show that the defendants agreed to commit actions that violated his or her constitutional rights. *Lewis v. Law–Yone*, 813 F. Supp. 1247, 1256 (N.D. Tex. 1993) (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)) (emphasis added). A bald allegation that a conspiracy exists, unsupported by any factual allegations, is insufficient. *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987); *see also Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994) (stating that a plaintiff is required to allege facts sufficient to suggest an agreement among one or more parties).

Here, Husband alleges that Detective conspired with Deputy Smith "to tamper with government records and remove [an] affidavit from the record" to help secure his arrest warrant. (doc. 109 at 28.) He also alleges that Detective and Deputy Smith conspired to have his concealed handgun license revoked. (*Id*. at 29.) He does not allege that Detective and Deputy Smith entered into an agreement, nor do his factual allegations show that there was any agreement between them. His "'conclusory allegations of conspiracy cannot, absent reference to material facts' state a substantial claim of federal conspiracy under 42 U.S.C. § 1983.'" *Shinzing v. City of Cleburne*, No. 3:00-CV-2670-G, 2001 WL 210483, at *2 n.3 (N.D. Tex. Feb. 28, 2001) (quoting *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986)); *see Green*, 27 F.3d at 1089 (5th Cir. 1994). Because Husband "fails to set forth specific allegations that [Detective and Deputy Smith] agreed to commit an illegal act," his conspiracy claims against them should be dismissed for failure to state a claim. *Simmons v. Jackson*, No. 3:15-CV-1700-S-BT, 2018 WL 210483, at *4 (N.D. Tex. Sept. 6, 2018) (dismissing

section 1983 conspiracy claim for failure to state a claim).

G.    **No Cognizable Oath of Office Claim**

Defendants also argue that Plaintiffs' claims that are based on "defective oaths of office must be dismissed with prejudice because they are not cognizable."  (doc. 110 at 22-23.)  Plaintiffs asserts claims for breach of contract against Deputies and the Sheriff for allegedly breaching their oaths of office.  (docs. 36 at 2-3, 7, 9, 13, 15, 18, 21, 28; 109 at 30.)[32]

"[C]laims based on an alleged failure to take the oaths of office required by Texas state law do not raise a federal constitutional claim."  *Bresler v. Dretke*, No. 3:04-CV-2046-B, 2006 WL 1867836, at *2 (N.D. Tex. July 6, 2006) (citing *Dean v. Dretke*, No. 03-10775, slip op. at 2 (5th Cir. Feb. 2, 2004) (unpublished opinion)).  Accordingly, any claims based on the allegedly invalid oaths of office  or the failure to take oaths of office, including Plaintiffs' breach of contract claims, should be dismissed for failure to state a claim upon which relief can be granted.[33]  *See Bresler*, 2006 WL 1867836, at *2; *Hughes v. Long*, No. 3:05-CV-676-K, 2005 WL 910551, at *1 (finding that a plaintiff failed to state a claim under section 1983 for the alleged failure to file oaths of office as required by state law).[34]

---

[32] Plaintiffs do not appear to be asserting a separate claim based on the allegedly defective oaths of office.  (*See* docs. 36; 109.)

[33] As noted, the Court may exercise supplemental jurisdiction over Plaintiffs' state law claims because they form part of the same case or controversy or derive from one common nucleus of operative fact.  *See McKee*, 2007 WL 2381246, at *4.  An officer's "obligations to the people of the [c]ounty [under an oath of office] do not establish a legally binding and enforceable 'contract' for purposes of a state-law breach of contract" claim.  *James v. Martinez*, No. SA-17-CV-680-XR, 2017 WL 5588191, at *5 (W.D. Tex. Nov. 17, 2017); *see also Farrell v. United States*, No. 09-209C, 2009 WL 3719211, at *3 (Fed. Cl. Oct. 30, 2009) (an oath of office . . . is not an express or implied contract with any individual citizen, and therefore an action for breach cannot be maintained . . . .").

[34] Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims if it abstains or dismisses all of Plaintiffs' federal claims.  (doc. 110 at 15, 19.)  All of their federal claims are not subject to dismissal at this point, however, and the Court has already determined that it should exercise supplemental jurisdiction as to Plaintiffs' state law claims because they form part of the same case or controversy or

### IV. CLAIMS AGAINST ATTORNEY

Husband asserts that Attorney violated his "right to [his] choice of counsel" under the Fourth and Sixth Amendments. (doc. 109 at 13-15.) Attorney has not moved to dismiss any claims against him. As noted, a court may *sua sponte* dismiss a plaintiff's claims on its own for failure to state a claim as long as the plaintiff has notice and an opportunity respond. *See Carroll*, 470 F.3d at 1177 (citing *Shawnee Int'l., N.V.*, 742 F.2d at 236).

As also noted, section 1983 provides redress for constitutional violations that occurred under color of state law. *See Livadas*, 512 U.S. at 132; *Flagg Bros., Inc.*, 436 U.S. at 155; *Cornish*, 402 F.3d at 549. "Under color of state law" excludes from its reach purely private conduct, no matter how discriminatory or wrongful. *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). In some circumstances, a private party may be acting "under color of state law" and held liable under § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). For example, in *Priester v. Lowndes Cty.*, 354 F.3d 414 (5th Cir. 2004), *cert. denied*, 543 U.S. 829 (2004), the Fifth Circuit explained that "[f]or a private citizen . . . to be held liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors." *Id*. at 420 (citing *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir. 1989) (per curiam)). The plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights. *Id*.; *see also Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 676 (5th Cir. 2015). Allegations that are merely conclusory, without reference to specific facts, will not suffice. *Priester*, 354 F.3d at 423 n.9 (citing *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (per curiam)). Here, Husband does not allege that Attorney conspired with a state actor. (doc. 109 at 13-15.)

derive from one common nucleus of operative fact. *See McKee*, 2007 WL 2381246, at *4. Accordingly, the proceedings are subject to stay as to both the remaining federal and state law claims noted above.

In the absence of an alleged conspiracy with a state actor, a private party can be held to be a state actor (1) where there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself, (2) where the private party has exercised powers that are "traditionally the exclusive prerogative of the state," or (3) where the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the action of the private party must in law be deemed to be that of the state. *Blum*, 457 U.S. at 1004; *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982) (recognizing three tests for determining whether a private party is acting under color of state law: the public function test, the state compulsion test, and the joint action or nexus test).

Here, Husband does not allege any facts to support a finding that Attorney is a state actor or that he engaged in anything other than private conduct under any of the three tests for state action. He alleges only that Attorney "is a state actor because he acts as an instrument and/or agent of the government . . . by and through the authority of Dallas County" by issuing "surety bonds for defendants in Dallas County for the Dallas County Sheriff's Department . . . ." (doc. 106 at 15.) He also claims that Attorney "was hired by Dallas County to act as a bondsman." (*Id.*) "[B]ail bondsmen are generally not considered state actors for purposes of liability under 42 U.S.C. § 1983," however. *Lafayette v. Prince*, No. 5:12cv122, 2013 WL 2637191, at *2 (E.D. Tex. June 11, 2013) (citing cases); *see Gallegos v. Strain*, No. 08-1393, 2008 WL 2185053, at *3 n.11 (E.D. La. May 23, 2008) (recognizing that bail bondsman are generally not state actors); *see also Landry v. A–Able Bonding Inc.*, 75 F.3d 200, 204 (5th Cir. 1996) (finding that a bail bondsman was not a state actor); *Hunt v. Steve Dement Bail Bonds Inc.*, 914 F. Supp. 1390, 1393 (W.D. La. 1996) (same), *aff'd*, 96

51

F.3d 1443 (5th Cir. 1996).[35]  Accordingly, Husband has failed to state a viable claim under § 1983 against Attorney, and his claims against him should be dismissed *sua sponte*.  *See Lafayett*e, 2013 WL 2637191, at *2 (dismissing claims against a bail bondsman because he was not a state actor); *see also Brown v. 7-Eleven*, No. 3:18-CV-1548-S-BH, 2018 WL 4976727, at *2 (N.D. Tex. Sept. 24, 2018) (dismissing section 1983 claims against private parties for failure to state a claim).

## V. RECOMMENDATION

Husband's motion for injunctive relief should be **DENIED**, and his claims for injunctive relief should be **DISMISSED without prejudice** for lack of subject-matter jurisdiction based on the *Younger* abstention doctrine.  Defendants' motion to dismiss should be **GRANTED in part** and **DENIED in part**, and Wife's claims for excessive force under the Eighth Amendment, unlawful seizure of her cell phone under the Fourth Amendment, violations of her right to record under the First Amendment, and violations of the Fifth and Ninth Amendments, and Husband's failure to train claim against the County, federal claims against the Court Coordinator, Magistrate, Detective, and Sheriff, § 1983 conspiracy claims against Deputy Smith only for the alleged conspiracy between him and Detective, and state law claims against the Magistrate and Sheriff, as well as any claims by Plaintiffs based on defective oaths of office should be **DISMISSED with prejudice**.  Husband's claims against Attorney and his remaining claims against the County should be *sua sponte* **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted.

The proceedings should be **STAYED** as to Husband's remaining claims against Deputies[36]

---

[35] "An exception to this rule can exist where the bondsman enlists the assistance of law enforcement officers in arresting the principal . . . ." *Lafayette*, 2013 WL 2637191, at *2 (citing cases). That situation is not present here, however, because Husband only alleges that Attorney filed a false affidavit which resulted in his arrest.

[36] Husband's remaining claims against Deputies appear to be claims for violations of the Second, Fourth, and Fourteenth Amendments for excessive force, false arrest, and unlawful search and seizure. (*See* doc. 109.)

and as to Wife's remaining claims for excessive force under the Fourth Amendment, unlawful seizure of her person and unlawful search and seizure of her vehicle under the Fourth Amendment, due process and equal protection violations under the Fourteenth Amendment, conspiracy under § 1983, and violations of the Declaration of Independence, Texas Constitution, and state law[37] against Deputies pending the outcome of Husband's state court criminal case. Defendants' motion to stay discovery is **DENIED as moot**.[38]

       **SO RECOMMENDED** on this 6th day of December, 2018.



IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[37] Wife's remaining claims appear to be state law claims for assault and battery, breach of fiduciary duty, criminal conversion, intentional infliction of emotional distress, invasion of privacy, trespass, witness tampering, and fraud. (*See* doc. 36.)

[38] As noted, Defendants also filed a motion to stay discovery in this case. (doc. 114.) Their motion seeks to stay all discovery pending a ruling on their motion to dismiss. (*See id.*) Because the motion to dismiss should be granted in part and denied in part, and the proceedings should be stayed as to the remaining claims, Defendants' motion to stay discovery is denied as moot. *See Willis*, 2015 WL 13651763, at *6 (denying motion to stay discovery as moot where the proceedings were stayed under *Heck*).

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE